**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DELAWARE STATE UNIVERSITY              )
STUDENT HOUSING FOUNDATION, a          )
Delaware Corporation.,                 )
                                       )      C.A. NO. _____
          Plaintiff,                   )
                                       )      (Removed from the Superior Court of the
v.                                     )          State of Delaware in and for Kent
                                       )          County, C.A. No. 07C-09-013-WCW)
AMBLING MANAGEMENT COMPANY,            )
                                       )
          Defendant.                   )
                                       )

## <u>NOTICE OF REMOVAL</u>

**COMES NOW** Ambling Management Company ("AMC"), Defendant in the above-

captioned matter, which is currently pending in the Superior Court of the State of Delaware in

and for Kent County (the "Superior Court Action"), and, pursuant to 28 U.S.C. §§ 1441 and

1446, hereby removes the Superior Court Action to the United States District Court for the

District of Delaware.  In accordance with the provisions of 28 U.S.C. § 1446(a), AMC

respectfully shows the Court as follows:

1.

On or about September 13, Delaware State University Student Housing Foundation (the

"Foundation") filed a civil action ("Complaint") in the Superior Court of the State of Delaware in

and for Kent County, C.A. No. 07C-09-013-WCW.

2.

True and correct copies of the Complaint, Summons, Order Appointing a Special Process

Server, and Certificate of Non-Arbitration filed in the Superior Court Action are attached hereto

as Exhibit "A."

3.

The Foundation served the Summons and Complaint upon the Secretary of State of the

State of Delaware on September 17, 2007.

4.

The Foundation served a copy of the summons and Complaint on Ambling Management

by registered mail on September 17, 2007.

5.

The Foundation's Complaint states on its face that Plaintiff, the Foundation is a Delaware

corporation, with its principal place of business located at 1200 N. DuPont Highway, Dover,

Delaware 19901.

6.

AMC is a Georgia corporation whose principal place of business is located at 348

Enterprise Drive, Valdosta, Georgia 31601.  Accordingly, there is complete diversity of

citizenship between the Foundation and AMC.

7.

The Foundation's Complaint alleges damages in an amount "in excess of $1,500,000.00."

As a consequence, the amount in controversy exceeds $75,000.00, exclusive of fees, interest, and

costs.

8.

Because of the complete diversity of citizenship between the parties and the size of the amount in controversy, this Court has original subject matter jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1332, and the action is removable to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b).

9.

This Notice of Removal is filed within thirty (30) days of AMC's receipt of the Complaint, and is therefore timely under 28 U.S.C. § 1446 (b).

10.

Contemporaneously with the filing of this Notice of Removal, AMC has served written notices on counsel for Plaintiff and the Clerk of the Superior Court of the State of Delaware in and for Kent County, as provided by 28 U.S.C. § 1446(d).

11.

Pursuant to the provisions of 28 U.S.C. § 1446, copies of all process, pleadings, and orders filed in the State Court Action are attached hereto as follows:

(a)    The Foundation's Complaint, Summons, Order Appointing a Special Process Server, and Certificate of Non-Arbitration filed in the Superior Court Action are attached hereto as Exhibit "A."

The parties have filed no other pleadings, process, or orders in the Superior Court Action.

**WHEREFORE**, AMC gives notice that the Superior Court Action is herewith removed to the United States District Court for the District of Delaware.

Respectfully submitted this 5th day of October, 2007.

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
*A Professional Limited Liability Company*

By:  ⟨signature⟩

Gerard M. O'Rourke(DE #3265)
AnnaMartina Tyreus (DE # 4771)
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801
Main Number: (302) 252-4320
Main Fax: (302) 252-4330
gorourke@wcsr.com
mtyreus@wcsr.com


Robert R. Ambler, Jr. (GA #014462)
John G. Perry (GA#141609)
**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
One Atlantic Center, Suite 3500
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 872-7000
Fax: (404) 888-7490
rambler@wcsr.com
joperry@wcsr.com

*Attorneys for Ambling Management Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within and foregoing

*Notice of Removal* has been served upon counsel of record by placing same in the United States

postal service with proper postage affixed thereto and addressed to the following:

      Kathleen Furey McDonough
      Sarah E. DiLuzio
      Potter Anderson & Corroon, LLP
      1313 N. Market Street
      P.O. Box 951
      Wilmington, DE 19899-0951
      (302)984-6000

This 5th day of October, 2007.

                AnnaMartina Tyreus (DE # 4771)

# EXHIBIT A

SUMMONS  SECRETARY OF STATE

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

DELAWARE STATE UNIVERSITY )
STUDENT HOUSING FOUNDATION, )
a Delaware corporation, )         C.A. No. 07C-09-013 WLW
)
        Plaintiff, )
)         NON-ARBITRATION CASE
    v. )
)         JURY TRIAL DEMANDED
AMBLING MANAGEMENT COMPANY, )
)
        Defendant. )

07 SEP 13 PM 4: 30
KENT COUNTY
PROTHONOTARY
RECEIVED
AND
FILED

## SUMMONS

THE STATE OF DELAWARE,
TO THE SPECIAL PROCESS SERVER:

### YOU ARE COMMANDED:

1.    To summon the below-named defendant so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon Sarah E. DiLuzio, plaintiff's attorney, whose address is c/o Potter Anderson & Corroon LLP, Hercules Plaza - Sixth Floor, 1313 North Market Street, Wilmington, DE  19801, an answer to the complaint (and, if an affidavit of demand has been filed, an affidavit of defense).

2.    To serve upon defendant a copy hereof and of the complaint (and of the affidavit of demand if any has been filed by plaintiff).

Dated: _____        *LISA ROBINSON* _____
*Prothonotary*

_____
*Per Deputy*

AMBLING MANAGEMENT COMPANY

**TO THE ABOVE-NAMED DEFENDANT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint (and, if an affidavit of demand has been filed, an affidavit of defense), judgment by default will be rendered against you for the relief demanded in the amended complaint (or in the affidavit of demand, if any).

LISA ROBINSON
*Prothonotary*

Per Deputy

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)

COUNTY:   NEW CASTLE ☐   KENT ☒   SUSSEX ☐          Civil Action Number: OJC-09-013 WW

Civil Case Code: CDEJ                                     Civil Case Type: Declaratory Judgment

<div align="center">(SEE PAGE TWO FOR CIVIL CASE CODE & CIVIL CASE TYPE)</div>

| Caption: | Name and Status of Party filing document: |
|---|---|
| **DELAWARE STATE UNIVERSITY STUDENT HOUSING FOUNDATION,** a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>**AMBLING MANAGEMENT COMPANY,**<br><br>        Defendant. | Delaware State University Student Housing Foundation, Plaintiff<br><br>Document Type: (e.g., COMPLAINT; ANSWER WITH COUNTERCLAIM)<br><br>Complaint<br><br>Non-Arbitration ☒      eFile ☒<br><br><div align="center">(CERTIFICATE OF VALUE MAY BE REQUIRED)</div><br>Arbitration ☐   Mediation ☐   Neutral Assessment ☐<br><br>DEFENDANT (CHECK ONE)   ACCEPT ☐   REJECT ☐<br><br>JURY DEMAND  YES ☒   NO ☐<br><br>TRACK ASSIGNMENT REQUESTED: (CHECK ONE)<br>EXPEDITED ☐  STANDARD ☒  COMPLEX ☐ |
| **ATTORNEY NAME(S):**<br><br>Kathleen Furey McDonough<br>Sarah E. DiLuzio<br>ATTORNEY ID(S):<br><br>I.D. 2395<br>I.D. 4085<br>FIRM NAME:<br><br>Potter Anderson & Corroon LLP<br>ADDRESS:<br><br>Hercules Plaza, 1313 N. Market Street,<br>P.O. Box 951, Wilmington, DE 19899-0951<br><br>TELEPHONE NUMBER:<br><br>302-984-6000<br>FAX NUMBER:<br><br>302-658-1192<br>E-MAIL ADDRESS:<br><br>sdiluzio@potteranderson.com | Identify any related cases now pending in the Superior Court by Caption and civil action number including judge's initials<br><br>_____<br><br>EXPLAIN THE RELATIONSHIP(S):<br><br>_____<br><br>_____<br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br><br>_____<br><br>_____<br><br><div align="center">(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE.)</div> |

*07 SEP 13 PM 4: 26  KENT COUNTY PROTHONOTARY  RECEIVED AND FILED*

THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.

## SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)
## INSTRUCTIONS

**CIVIL CASE TYPE**
Please select the appropriate civil case code and case type (e.g., **CODE - AADM** and **TYPE - Administrative Agency**) from the list below. Enter this information in the designated spaces on the Case Information Statement.

**APPEALS**
AADM- Administrative Agency
ACER – Certiorari
ACCP - Court of Common Pleas
AIAB - Industrial Accident Board
APSC - Public Service Commission
AUIB - Unemployment Insurance Appeal Board

**COMPLAINTS**
CASB – Asbestos
CAAA - Auto Arb Appeal *
CMIS – Civil Miscellaneous
CACT - Class Action
CCON – Condemnation
CDBT - Debt/Breach of Contract *
CDEJ - Declaratory Judgment
CDEF - Defamation *
CEJM - Ejectment *
CATT - Foreign & Domestic Attachment
CFJG - Foreign Judgment *
'FRD - Fraud Enforcement
CINT – Interpleader
CLEM – Lemon Law *
CLIB - Libel *
CMAL - Malpractice *
CPIN - Personal Injury *
CPIA - Personal Injury Auto *
CPRL - Products Liability *
CPRD - Property Damage *
CRPV - Replevin
CSBI - Silicone Breast Implant
CSPD - Summary Proceedings Dispute
CTAX - Tax Appeal
CCCP - Transfer from CCP*
CCHA - Transfer form Chancery *

**INVOLUNTARY COMMITMENTS**
INVC- Involuntary Commitment

**MISCELLANEOUS**

MAFF - Application for Forfeiture
MAAT - Appointment of Attorney
MGAR - Appointment of Guardianship
MCED - Cease and Desist Order
MCON – Civil Contempt/Capias
MCVP - Civil Penalty
MSOJ - Compel Satisfaction of Judgment
MCRO - Complaint Requesting Order
MCTO - Consent Order
MIND - Destruction of Indicia of Arrest
MHAC - Habeas Corpus
MTOX - Hazardous Substance Cleanup
MFOR - Intercept of Forfeited Money
MISS - Issuance of Subpoena/Material Witness
MMAN - Mandamus
MOUT - Out of State Deposition
MROP - Petition for Return of Property
MROD - Road Resolution
MSAM - Satisfy Mortgage
MSEL - Sell Real Estate for Property Tax
MSEM - Set Aside Satisfaction of Mortgage
MSSS - Set Aside Sheriff's Sale
MSET - Structured Settlement
MTAX – Tax Ditches
MREF - Tax Intercept
MLAG – Tax Lagoons
MVAC - Vacate Public Road
MPOS - Writ of Possession
MPRO - Writ of Prohibition

**MORTGAGES**

MORT - Mortgage

**MECHANICS LIENS**

LIEN - Mechanics Lien *

**\* Case types subject to Arbitration Rule 16.1 – Alternative Dispute Resolution**

**DUTY OF THE PLAINTIFF**
Each plaintiff/counsel shall complete the attached Civil Case Information Statement (CIS) and file with the complaint.

**DUTY OF THE DEFENDANT**
Each defendant/counsel shall complete the attached Civil Case Information Statement (CIS) and file with the answer and/or first responsive pleading.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

DELAWARE STATE UNIVERSITY )
STUDENT HOUSING FOUNDATION, )
a Delaware corporation, )       C.A. No. _____
                              )
        Plaintiff, )
                              )       NON-ARBITRATION CASE
    v. )
                              )       JURY TRIAL DEMANDED
AMBLING MANAGEMENT COMPANY, )
                              )
        Defendant. )

## CERTIFICATE OF NON-ARBITRATION

I, Sarah E. DiLuzio, attorney for plaintiff, hereby certify in good faith at this time, in my opinion, that this is an action for breach of contract where the monetary damages are in excess of One Hundred Thousand Dollars ($100,000), exclusive of costs and interest, and that this action is therefore excepted from compulsory arbitration pursuant to Superior Court Civil Rule 16.1(a).

POTTER ANDERSON & CORROON LLP

By: _Sarah DiLuzio_____
Kathleen Furey McDonough (I.D. # 2395)
Sarah E. DiLuzio (I.D. # 4085)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19801
Telephone: (302) 984-6000

Attorneys for Plaintiff Delaware State
University Student Housing Foundation

Dated: September 12, 2007
815520

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

DELAWARE STATE UNIVERSITY )
STUDENT HOUSING FOUNDATION, )
a Delaware corporation, )
                              )
          Plaintiff, )
                              )
          v. )
                              )
AMBLING MANAGEMENT COMPANY, )
                              )
          Defendant. )

C.A. No. 07C-09-013 WCW

NON-ARBITRATION CASE

JURY TRIAL DEMANDED

07 SEP 13 PM 4: 32
KENT COUNTY
PROTHONOTARY

RECEIVED
AND
FILED

## COMPLAINT

Plaintiff Delaware State University Student Housing Foundation ("the Foundation"), as

and for its complaint against Defendant Ambling Management Company ("Ambling"), alleges as

follows:

### Nature of the Action

1.     This is an action for declaratory judgment, breach of contract, and tortious

interference with business relations. Pursuant to contracts by and among Ambling, the

Foundation and DSU, Ambling agreed to manage, maintain and operate the Foundation's two

properties in a "First Class Manner." The properties provide housing for students of Delaware

State University. Ambling has failed to do so, and its failure to fulfill its contractual obligations

has resulted in the deterioration of the properties and, more importantly, has resulted in

conditions that pose health and safety risk to the students of Delaware State University. The

Foundation seeks a declaratory judgment that Ambling has breached the parties' two contracts,

as well as damages in connection with those breaches and the resultant harm to the Foundation's

relationship with those whom it serves.

<u>The Parties</u>

2.    Plaintiff Delaware State University Student Housing Foundation is a Delaware corporation with its principal place of business located at 1200 N. DuPont Highway, Dover, Delaware 19901.

3.    Defendant Ambling is a Georgia corporation with its principal place of business located at 348 Enterprise Drive, Valdosta, Georgia 31601.

4.    This Court has jurisdiction over Defendant Ambling pursuant to 10 *Del. C.* § 3104, because Ambling transacts business in Delaware; contracts to provide goods and services in Delaware; and/or has consented to the jurisdiction of this Court by contract.

<u>The Contracts</u>

5.    The Foundation is the leasehold owner of two properties, the University Courtyard Apartments (the "Courtyard") and the University Village (the "Village"), located on the main campus of Delaware State University ("DSU") in Dover, Delaware. The Courtyard is comprised of a 416- bed student housing facility and the Village contains a 628- bed student housing facility and a student dining hall. Both properties are maintained for the sole benefit of DSU, and only DSU matriculated students, faculty or staff are eligible tenants.

6.    Ambling provides property management services to universities across the country, and advertises that it provides "a full suite of management services and solutions." Ambling further proclaims in its marketing material that: "Every owner, financial institution and university we have the privilege to serve is unique and our continued success is based on our flexibility to work in a constantly changing environment."

2

7.      The Foundation entered into a multi-million dollar Management Agreement with Ambling, dated January 1, 2004, which appointed Ambling as an independent contractor to manage and lease the Courtyard apartments. (Attached as Exhibit A.)

8.      The Foundation entered into a second multi-million dollar Management Agreement with Ambling, dated August 1, 2005, which appointed Ambling as an independent contractor to manage and lease the Village apartments. (Attached as Exhibit B.)

9.      The Management Agreements for the Courtyard and the Village are nearly identical in all relevant respects. Both Agreements provide that "[Ambling] shall provide all services reasonably necessary, proper, desirable or appropriate for the successful management and operation of the Premises in First Class Manner." (*See* Ex. A and B, § 2.2.)

10.     "First Class Manner" is defined by both Management Agreements to mean "keeping the Premises in good condition and repair, free of dirt, rubbish, snow, ice, graffiti and unlawful obstructions, and in compliance with all applicable legal requirements." (*See* Ex. A and B, § 1.1.)

11.     Specifically, Ambling is required to:

> [O]ffer space in the Premises and use its best efforts to cause the space in the Premises to be fully leased . . . to Tenants which are Eligible Tenants who are Creditworthy on the best terms available for [the Foundation], acting in the best interest of [the Foundation].

(*See* Ex. A and B, § 2.3).)

> Prepare and . . . execute on behalf of [the Foundation] all Contracts for water, sanitary and storm sewer, drainage, electricity, steam, gas, telephone, fuel, cleaning, garbage removal, pest control, Internet access, cable television, Premises security and other utilities and services necessary or appropriate for the management and operation of the Premises in accordance with the Annual Budget . . .

(*See* Ex. A and B, § 3.1(a)(ii).)

3

> Purchase all supplies and equipment necessary or appropriate for
> the management and operation of the Premises in accordance with
> the Annual Budget . . .

(*See* Ex. A and B, § 3.1(a)(iii).)

> [C]onsult with, and make recommendations to, [the Foundation]
> concerning the condition of the Premises and the necessity for
> maintenance, repair, alteration or Restoration thereof including the
> preparation of an annual schedule for maintenance and repair;
> contract for all work, labor and services necessary or appropriate to
> maintain and repair the Premises . . . promptly notify [the
> Foundation] upon learning that the condition of the Premises
> materially fails to meet any standard of maintenance and repair
> required under any Contract, Legal Requirement or Insurance
> Requirement . . .

(*See* Ex. A and B, § 3.1(a)(vii).)

12.     Furthermore, the Agreements provide that Ambling "shall not commit or permit waste of the Premises." (*See* Ex. A and B, § 3.1(g).)

13.     As part of its leasing duties, Ambling is required to ensure that each tenant within the Courtyard and the Village signs a written lease, and abides by the terms of that lease. (*See* Ex. A and B, § 3.3; Article IV). It is Ambling's responsibility to ensure that tenants are not violating their lease by, for example, allowing unauthorized people (non-DSU students) to live in the apartments or having pets. *Id.*

14.     In exchange for Ambling's management services, the Foundation paid it $ 257,069.00 in management fees for the fiscal year ending May 31, 2006 and $ 270,103.00 to date for fiscal year 2007.

15.     The Management Agreements do not expire until July 31, 2016. (*See* Ex. A and B, Sect. 7.1). The Management Agreements provide, however, that the Foundation may

terminate the Agreements if an "Event of Default" occurs and is continuing.  (*See* Ex. A and B, § 7.2).

16.    The Agreements outline several Events of Default, including "gross negligence, willful misconduct, fraud malfeasance or breach of fiduciary duty"; "fail[ure] to follow any reasonable written direction of [the Foundation] with respect to the Premises"; and/or "fail[ure] to comply with any provision of th[e] Agreement[s]" (*See* Ex. A and B, §§ 7.2 (c), (e), (h)).

17.    If an Event of Default arises, the Agreements require that Ambling be provided with written notice and a fifteen-day cure period.  (*See* Ex. A and B, §§ 7.2 (c), (e), (h); 8.1).  If Ambling fails to cure the defaults within the requisite period, the Foundation may terminate the Agreements.

18.    The Management Agreements are governed by Delaware law.  (*See* Ex. A and B, § 8.13).

<u>The Breach/Default</u>

19.    For several months, the Foundation has become increasingly aware of, and dissatisfied with, problems with Ambling's management of the Courtyard and the Village.  To this end, the Foundation has invited representatives from Ambling to attend its Board meetings for months so that the parties could work towards resolving the problems that were being reported.

20.    At the April 26, 2007 Foundation Board meeting, Ambling was specifically advised that the Foundation is dissatisfied with its management of the properties.  The Foundation Board identified specific areas, particularly with regard to security,  with respect to which Ambling was failing to meet its contractual duty and that Ambling needed to correct.

21.    The Foundation continued to work with Ambling representatives to resolve these problems. Indeed, the Foundation's counsel at the time wrote to Ambling on June 28, 2007 indicating that the Foundation was willing to meet with Ambling to discuss a resolution of the contract disputes. (6/28/07 Letter attached as Exhibit C.) Ambling did not respond to the Foundation's request for a meeting.

22.    Nonetheless, the Foundation continued to pressure Ambling to fulfill its responsibilities under the terms of the Management Agreements.

23.    In recent weeks, however, the Foundation has discovered that Ambling's failure to abide by the terms of the Management Agreements is a more widespread and serious problem than previously believed.

24.    In early August 2007, DSU facilities personnel conducted inspections of the Courtyard and the Village in connection with the budgeting process for an anticipated capital campaign. DSU and the Foundation were shocked and disgusted with the conditions observed in many of the apartments – apartments that Ambling is paid to maintain in "first class" condition.

25.    Most startling were conditions that pose a direct threat to the safety and security of DSU students. The Courtyard and the Village apartments are equipped with smoke detectors and "panic buttons," that allow students to immediately summon assistance in the event of an emergency. The panic buttons are installed in every bedroom. During their inspections, DSU personnel found many smoke detectors and panic buttons were inoperable. Additionally, many apartment doors were damaged so that they did not properly or securely close.

26.    The safety of DSU students is of paramount concern to both DSU and the Foundation. The smoke detectors, panic buttons, and secure outer doors installed in the Courtyard and Village are furnished to help ensure the students' safety. Ambling's failure to

maintain these devices in good working order is a breach of its responsibilities under the Management Agreements and poses an unacceptable risk to DSU students.

27.     On August 10, 2007, Foundation President Amir Mohammadi wrote to the President of Ambling to notify it that, among other things, it needed to repair the non-functioning smoke detectors, panic buttons, and broken doors, and replace the unclean air vents that had been observed in several apartment units.  (8/10/07 Letter is attached As Exhibit D.)  Mr. Mohammadi's letter further advised Ambling that its recent practice of obtaining waivers from students allowing them to move into unsafe and unsanitary apartment units was not acceptable and the practice must be ceased.

28.     Ambling did not respond to the August 10, 2007 letter.

29.     Unfortunately, DSU personnel continued to find examples of Ambling's failure to maintain the Courtyard and Village apartments in a first class manner.  During additional inspections, DSU observed black mold in several apartments.  DSU immediately hired an independent contractor, Environmental Testing, Inc., to inspect the mold, evaluate the health risks it posed, and recommend a remediation plan.  Environmental Testing, Inc. issued a report documenting its results, and finding that the mold growth was attributable to water damage to drywall, flooring and carpet below and adjacent to HVAC air handling units and the sinks of the affected apartments.

30.     Environmental Testing's report explains that the water damage is a result of excess condensation from heat exchanger coils and refrigerant lines.  Indeed, in one HVAC unit, the coil was frozen solid in ice due to excessive cooling.  The excessive cooling and condensation was caused by Ambling's failure to properly maintain the air filters in the HVAC units, which allowed dirt and debris to pass around the filter and clog the coils.

31.    Mold was also present behind sink backsplash boards in the units inspected due to an improper seal between the sink and the backsplash that allowed water to penetrate.

32.    Environmental Testing recommended that a trained mold remediation contractor remove all water damaged materials, including drywall and flooring, using full containment enclosure with HEPA filtration; install commercial dehumidifiers to reduce humidity in the affected units; decontaminate or dispose of backsplash boards and properly seal the boards so water will not penetrate; properly clean the HVAC coils with HEPA vacuuming; install critical seals on all duct openings; and install the correct size air filters.

33.    The Environmental Testing report warned that "quick fixes," such as application of bleach, would only temporarily remove surface growth and would not remedy the underlying mold growth.

34.    DSU and the Foundation advised Ambling of the results of Environmental Testing's report and demanded that they immediately remediate the mold.

35.    In addition to the inoperable safety devices and mold observed in many apartment units, DSU personnel also observed generally poor conditions in a number of apartments. These conditions included, but were not limited to:

a.    Many apartments had toilets or sinks that did not work properly.

b.    In several apartments, the appliances were damaged or broken.

c.    In other apartments, drywall was visibly damaged and the carpets are obviously in need of replacement.

d.    Finally, DSU observed a number of violations of the terms of individual leases, which Ambling had a duty to enforce. Many apartments had non-DSU students

8

residing in them, including, in one case, an infant. Several others had pets, which are not permitted in the facility.

36.     Following DSU's discovery of these additional problems, Mr. Mohammadi again wrote to Ambling's President on August 17, 2007. (8/17/07 Letter attached as Exhibit E.) The August 17, 2007 letter put Ambling on Notice, as that term is defined in the Management Agreements, that it is in default of the Management Agreements, as defined by Section 7.2(h). The letter then outlined several examples of default, which conflict with Ambling's obligation under Section 2.2 to successfully manage and operate the "Premises in a First Class Manner."

37.     The instances of default identified in the August 17, 2007 letter (hereinafter referred to as the "Notice of Default") include:

1.     Generally uninhabitable rental units
2.     Damaged and nonfunctioning appliances
3.     Damaged or nonfunctioning toilets and sinks
4.     Damaged drywall
5.     Damaged and fetid carpets
6.     Damaged and/or missing door jambs
7.     Unchanged A/C and heating air filters
8.     Mold on walls and floors in several units
9.     Infant living in at least one unit despite repeated prior notices
10.    Other safety issues

38.     Each of the enumerated breaches were supported by photographs of representative apartments.

39.     The Notice of Default also indicated that the items listed above constituted waste of the Premises, in violation of Section 3.1(g) of the Management Agreements.

40.     Additionally, the Notice of Default advised Ambling that it had not provided the Foundation with a maintenance plan, as required by the Management Agreements, and that it

was further in default of Article IV of the Management Agreements for failure to adequately administer its leasing duties.

41.    As outlined above, the Notice of Default triggered a fifteen-day cure period during which Ambling was required to remedy the breaches outlined in the Notice of Default.

42.    Ambling responded to the Notice of Default by letter dated August 22, 2007, in which its President, William Blackwell, promised to "honor all of [Ambling's] obligations under the management agreement." (8/22/07 Letter attached as Exhibit F.)

43.    Mr. Mohammadi wrote to Ambling again on August 31, 2007, reiterating that Ambling was required to remedy all defects identified in the Notice of Default, in both the Courtyard and the Village. (8/31/07 Letter attached as Exhibit G.)

44.    On September 4, 2007, the final day of the cure period, Ambling's President, Mr. Blackwell, wrote to the Foundation advising that "all items which [were] identified as defaults" have been "corrected, remedied and cured" by Ambling. (9/4/07 Letter attached as Exhibit H.)

45.    Upon inspection, the Foundation discovered that was not the case. Despite months of notice of the Foundation's dissatisfaction with their management and maintenance of the properties, the Notice of Default, and the cure period, Ambling remained in default.

46.    Following the cure period, on September 5, 2007, DSU personnel again inspected representative units of the Courtyard and the Village to ensure that Ambling had rectified the identified problems, as it claimed. The inspection revealed that Ambling had not.

47.    One particularly widespread problem was the outer doors on apartment units, which were routinely found to be damaged so that they did not close properly or securely. Indeed, virtually none of the apartments in which this problem was previously identified had been repaired post-cure period. One apartment has a door jamb that was obviously reused,

having been simply flipped upside down so additional holes could be drilled for the lock, leaving the prior holes as an easy access point for anyone trying to break in.

48.    In several apartment units, the smoke detectors remained inoperable post-cure period. In some apartments, the smoke detectors were missing entirely, and wires were simply hanging from the ceiling where the detectors should have been.

49.    Panic buttons remained inoperable, or missing altogether, in several apartments.

50.    Although Ambling attempted to remedy the mold problem, its efforts were superficial and unsatisfactory. Generally, the mold identified around the HVAC units had been removed and the areas freshly painted. However, Ambling failed to remedy the root cause of the mold – the HVAC units were not cleaned, nor were the correct sized filters installed. In fact, just the opposite was observed.

51.    In many apartments, the filters in the HVAC units were filthy and had obviously not been cleaned or changed in some time. Indeed, in a few apartments, the HVAC unit had a maintenance log posted indicating that no maintenance had been done to the unit since 2004 or 2005.

52.    Despite Environmental Testing's report, several HVAC units still had coils frozen solid. Many other HVAC units still had filters that were too small, thereby allowing dirt and debris to flow freely through the unit and into the air. Still others had no filter at all.

53.    Additionally, the second problem area identified as having mold growth, kitchen sinks, were not repaired at all. The splashboards on the sinks remain improperly sealed so that water can penetrate and potentially cause more mold.

54.    As The Environmental Testing report warned, quick fixes will only temporarily remove surface growth and will not remedy the underlying mold growth. Ambling's attempts at

11

cure were quick fixes designed to mask the mold problem temporarily. Ambling made no effort to truly cure the default.

55.     Ambling failed to repair broken toilets, sinks, and showers during the cure period, all of which had been previously identified as events of default. In many apartment units, the shower rods, which are extension-type rods, are too short for the space and students have resorted to stuffing paper or blocks of wood on one end just to keep it in place.

56.     During their inspection on September 5, 2007, DSU personnel encountered several students who complained that they and their parents had to clean their apartment and shampoo the carpets when they moved in because they were so filthy.

57.     Notwithstanding the efforts of many students, several apartments still have carpeting and flooring that is filthy and fetid.

58.     Several apartments have damaged drywall that has not been repaired.

59.     The broken or inoperable appliances previously identified have not been repaired.

60.     Finally, the leasing violations identified by the Foundation have not been remedied. Apartments still have non-DSU students living in them and pets can still be seen within the Courtyard and the Village.

61.     Residence Life staff accompanied the team of DSU inspectors on September 5, 2007 and checked the individuals present in the inspected apartments for valid DSU identification. Those who did not have it were required to leave immediately.

62.     It is Ambling's responsibility to ensure that only authorized tenants are residing in the Courtyard and the Village. DSU and the Foundation staff accomplished in a single day what Ambling has failed to do for months (if not longer), *i.e.*, enforce the lease terms limiting tenancy to DSU students or staff.

63.     As a result of Ambling's failure to cure its many breaches of the Management
Agreements, Foundation President Amir Mohammadi wrote to Ambling on September 12, 2007
and advised that the Foundation is terminating those Agreements, effective immediately.
(9/12/07 Termination Letter attached as Exhibit I.)

64.     The Foundation further advised Ambling that it had until September 21, 2007 to
vacate the premises.

65.     The Foundation immediately assumed responsibility for the maintenance and
operation of the Courtyard and the Village apartments, and began making necessary repairs.

## COUNT I:  DECLARATORY JUDGMENT

66.     The Foundation repeats and realleges paragraphs 1 through 65 above as if fully
set forth herein.

67.     The Management Agreements obligate Ambling to manage and operate the
Courtyard and the Village in a "first class manner," to prevent waste of the Premises, and to
enforce lease terms that exist for the benefit of DSU students.

68.     As outlined above, Ambling has completely failed to do so, despite the
opportunity to cure.

69.     An actual controversy exists between the Foundation and Ambling regarding the
Foundation's right to terminate the Management Agreements.

70.     Pursuant to the provisions of 10 *Del. C.* § 6501 *et seq.*, the Foundation is entitled
to a declaratory judgment by the Court that Ambling materially breached the Management
Agreements by its failure to appropriately maintain the Premises, and that the Foundation was
therefore within its rights to terminate the Management Agreements and eject Ambling from the
Premises.

## COUNT II: BREACH OF CONTRACT

71.     The Foundation repeats and realleges paragraphs 1 through 70 above as if fully set forth herein.

72.     Defendant Ambling is bound by the terms of the Management Agreements, which required it to manage and operate the Premises in a first class manner, prevent waste of the Premises, and enforce lease terms that exist for the benefit of DSU students.

73.     Ambling breached its obligations by failing to maintain and repair or replace damaged or inoperable safety devices; entry doors; toilets; sinks; drywall; carpeting; and HVAC units.  Ambling further breached its obligations by failing to properly remediate mold contamination.  Ambling further breached its obligations by failing to enforce valid lease terms.

74.     As a result of Ambling's breach of the terms of the Management Agreements, the Foundation has suffered damages in excess of $ 1,500,000.00.

## COUNT III:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

75.     The Foundation repeats and realleges paragraphs 1 through 74 above as if fully set forth herein.

76.     The Foundation maintains the Courtyard and the Village apartments for the benefit of DSU students, with whom they have a contractual relationship to provide, safe, clean, and appropriate housing.

77.     Ambling's intentional failure to fulfill its obligations under the Management Agreements has adversely interfered with the Foundation's relationship with the DSU students whom it serves.

78.     Ambling's breach of the Management Agreements is the proximate cause of the damage the Foundation had sustained to its relationship with DSU students.

14

79.     As a result of Ambling's intentional interference, the Foundation has suffered undetermined damages to its reputation.

## PRAYER FOR RELIEF

Plaintiff Delaware State University Student Housing Foundation respectfully requests that this Court enter judgment in its favor, and against Ambling, as follows:

(a)     declaring that defendant Ambling materially breached the Management Agreements and that the Foundation was therefore entitled to terminate those contracts;

(b)     against defendant Ambling for damages in excess of $1,500,000.00, to be determined more particularly at trial;

(c)     against defendant Ambling for pre- and post-judgment interest on the sum of all damages awarded to the Foundation against defendant;

(d)     against defendant Ambling for the fees and costs incurred in asserting this action, including attorneys' fees; and

(e)     such other and further relief the Court may deem just and proper.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_

Kathleen Furey McDonough (I.D. # 2395)
Sarah E. DiLuzio (I.D. # 4085)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware 19801
Telephone: (302) 984-6000

Attorneys for Plaintiff Delaware State
University Student Housing Foundation

Dated: September 12, 2007
815520v5

15



Potter
Anderson
& Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Sarah E. DiLuzio
Attorney at Law
sdiluzio@potteranderson.com
302 984-6279  Direct Phone
302 658-1192  Fax

September 17, 2007

**BY REGISTERED MAIL -
RETURN RECEIPT REQUESTED**

Ambling Management Company
348 Enterprise Drive
Valdosta, Georgia 31601

      Re:   Delaware State University Student Housing Foundation v. Ambling
           Management Company, Del. Super., C.A. No. 07C-09-013 WLW

To Whom It May Concern:

      Enclosed please find copies of the Complaint and Summons filed in the above-referenced action on September 13, 2007.  The Complaint and Summons were served upon the Secretary of State of the State of Delaware on September 17, 2007.

      Service of these documents has been made upon the Secretary of State of the State of Delaware under the provisions of 10 Del. C. § 3104(d).  Pursuant to 10 Del. C. § 3104(d), such service is as effectual to all intents and purposes as if it had been made upon you personally within the State of Delaware.

           Sincerely,

           Sarah E. DiLuzio

Enclosures
816763/18877-009

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR KENT COUNTY

DELAWARE STATE UNIVERSITY )
STUDENT HOUSING FOUNDATION, )
a Delaware corporation, )    C.A. No. 07C-09-013 WLW
 )
Plaintiff, )
 )    NON-ARBITRATION CASE
v. )
 )    JURY TRIAL DEMANDED
AMBLING MANAGEMENT COMPANY, )
 )
Defendant. )

## ORDER APPOINTING A SPECIAL PROCESS SERVER

The motion for Appointment of Special Process Server, having been presented by

Plaintiff, and considered by the Court,

IT IS ORDERED this 14 day of September, 2007, that any employee of Parcels,

Inc., who is over the age of 18 and who is not a party to this action, is hereby specially appointed

pursuant to Superior Court Civil Rule 4(d), and directed to take such actions as may be necessary

to effect prompt service of the summons, praecipe and complaint upon the defendant.

_____
Superior Court Judge

PROTHONOTARY
KENT COUNTY
2007 SEP 14  PM 2:56
FILED
RECEIVED AND

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Delaware State University Student Housing Foundation

**(b)** County of Residence of First Listed Plaintiff    Kent County, Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Kathleen F. McDonough, Sarah E. DiLuzio, Potter Anderson & Corroon, LLP; 1313 N. Market Street, Wilmington, DE 19899-0951; 302-984-6000

## DEFENDANTS

Ambling Management Company

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)  Gerard O'Rourke, Marina Tyreus; WOMBLE CARLYLE SANDRIDGE & RICE LLC; 222 Delaware Avenue, Suite 1501 Wilmington, DE 19801; 302-252-4320

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
X 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | X 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| X 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
X 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing   28 USC 1332   (Do not cite jurisdictional statutes unless diversity):
Brief description of cause:   CONTRACT DISPUTE

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $   $1.5 MILLION
CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE ___   DOCKET NUMBER ___

DATE   10/5/07
SIGNATURE OF ATTORNEY OF RECORD   Anna Martina Tyreus Teel

---

FOR OFFICE USE ONLY

RECEIPT # ___   AMOUNT ___   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___