# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELAWARE STATE UNIVERSITY STUDENT HOUSING FOUNDATION, a Delaware Corporation, )  )  )  )  Plaintiff,  )  )  v.  )  )  AMBLING MANAGEMENT COMPANY,  )  )  Defendant.  )  ) | C.A. NO. 07-610 |

**DEFENDANT AMBLING MANAGEMENT COMPANY'S *CORRECTED* MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNT I AND COUNT III OF PLAINTIFF'S COMPLAINT**

Gerard M. O'Rourke(DE #3265)
Anna Martina Tyreus (DE # 4771)
**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
222 Delaware Avenue, 15th Floor
Wilmington, DE 19801
Main Number: (302) 252-4320

Robert R. Ambler, Jr. (GA #014462)
John G. Perry (GA#141609)
One Atlantic Center, Suite 3500
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 872-7000

Attorneys for Ambling Management Company

Date: November 16, 2007

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

ARGUMENT AND CITATION OF AUTHORITY ................................................................4

I.      THE MOTION TO DISMISS STANDARD ...................................................................4

II.     PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SHOULD BE
        DISMISSED BECAUSE PLAINTIFF IS NOT ENTITLED TO
        DECLARATORY RELIEF. ....................................................................................5
        A.      The Declaratory Judgment Act and Applicable Law................................5
        B.      Plaintiff's Declaratory Judgment Claim Should Be Dismissed Because
                Plaintiff Is Improperly Attempting to Have Its Past Conduct Declared
                Proper Under Circumstances Where Declaratory Relief Serves No Useful
                Purpose and Where Plaintiff Has No Future Uncertainty or Insecurity. .................7

III.    PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE SHOULD BE
        DISMISSED BECAUSE PLAINTIFF HAS FAILED TO ADEQUATELY
        PLEAD A CLAIM FOR TORTIOUS INTERFERNCE .................................................10
        A.      Elements of a Tortious Interference Claim. ...........................................10
        B.      Plaintiff's Tortious Interference Claim Should Be Dismissed Because the
                Complaint Fails to Adequately Plead Breach of Contract or Termination of
                the Business Relationship. ...................................................................11
        C.      Plaintiff's Tortious Interference Claim Should Be Dismissed Because the
                Complaint Fails to Adequately Plead Any Actions Taken by AMC to
                Intentionally Interfere with Plaintiff's Relationship with DSU Students. ............13
        D.      Plaintiff's Tortious Interference Claim Should Be Dismissed Because the
                Complaint Fails to Adequately Plead Facts to Support Plaintiff's
                Conclusory Allegation of Resultant Damages. ......................................15
        E.      Plaintiff's Tortious Interference Claim Should Be Dismissed Because
                AMC is Not a Stranger to the Contractual and Business Relationships It
                Allegedly Interfered With. ....................................................................16

CONCLUSION...........................................................................................................17

TABLE OF CONTENTS.............................................................................................. i

TABLE OF AUTHORITIES ....................................................................................... ii

WCSR 3751560v5

# TABLE OF AUTHORITIES

**CASES**

ACandS v. Aetna Cas. & Sur. Co., 666 F.2d 819 (3d Cir. 1981) ............................... 6, 9

Allied Capital Corp. v. GC-Sun Holdings, L.P., 910 A.2d 1020 (Del. Ch. 2006)....................... 11

Alpine Group, Inc. v. Johnson, 2002 WL 10495 (S.D.N.Y. 2002) ........................................... 6, 9

Amiot v. Kemper Ins. Co., 122 Fed Appx. 577, 2004 WL 2943983 (3d Cir. 2004) ..................... 5

Anderson v. Wachovia Mortg. Corp., 497 F. Supp. 2d 572 (D. Del. 2007) .................................. 4

Beacon Const. Co., Inc. v. Matco Elec. Co., Inc., 521 F.2d 392 (2nd Cir.1975) ...................... 7, 9

Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ................... 4

Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)........................................... 4

Corning Inc. v. SRU Biosystems, LLC, 292 F. Supp. 2d 583 (D. Del. 2003)............ 10, 11, 13, 14

Crown Cork & Seal Co., Inc. v. Borden, Inc., 779 F. Supp. 33 (E.D. Pa. 1991)................... 7, 8, 9

Data Mgmt. Int'l, Inc. v. Saraga 2007 WL 2142848 (Del. Sup. 2007) ........................................ 14

Envirometrics Software, Inc. v. Georgia-Pacific Corp., 1997 WL 699328 (D. Del. 1997) ....... 7, 9

Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345 (3d Cir.1986) ............................................. 5

Griffin Corp. Servs., LLC v. Jacobs, 2005 WL 2000775 (Del. Ch. 2005) ................. 11, 12, 13, 15

Gruntal & Co., Inc. v. Steinberg, 837 F. Supp. 85 (D.N.J. 1993).............................................. 6, 7

Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983 (Del. Ch. 1987).................... 11, 14

Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc., 5 F. Supp. 2d 238 (D. Del. 1998) ................... 13

Luscavage v. Dominion Dental USA, Inc., 2007 WL 901641 (Del. Super. 2007) ...................... 12

Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1998) ............................................. 5

Munich Welding, Inc. v. Great American Ins. Co., 415 F. Supp. 2d 571 (W.D. Pa. 2006) ........... 5

R.W. ex rel. Williams v. Delaware Dept. of Educ., 2007 WL 2213598 (D. Del. Aug. 2, 2007)................................................................................................................................. 4

Sun Oil Co v. Transcontinental Gas Pipe Line Corp., 108 F. Supp. 280 (E.D. Pa.1953) .............. 7

Tenneco Automotive, Inc. v. El Paso Corp., 2007 WL 92621 (Del. Ch. 2007) .................... 16, 17

TruePosition, Inc., v. Allen Telecom, Inc., 2003 WL 151227 (D. Del. 2003) ............................ 12

Trump Hotels & Casinos Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478 (3d Cir.1998)................................................................................................................................ 4

United Sweetener USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212 (D. Del.1991) ....................... 6

Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3rd Cir. 1987) ......................................... 6

ii

## STATUTES

28 U.S.C. § 2201(a) ................................................................................................. 6

## OTHER AUTHORITIES

MOORE'S FEDERAL PRACTICE, § 57.04[3] (3d ed. 2006) ............................................. 7

WCSR 3751560v5

**COMES NOW,** Ambling Management Company ("AMC" or "Defendant"), Defendant in the above-captioned matter, and pursuant to Federal Rule of Civil Procedure 12(b)(6), files this its Memorandum of Law in Support of its Motion to Dismiss Count I and Count III of Plaintiff Delaware State University Student Housing Foundation's (the "Foundation" or "Plaintiff") Complaint as follows:

## INTRODUCTION

The Plaintiff's Complaint seeks declaratory relief pursuant to Delaware's declaratory judgment statute (Count I) and additionally seeks damages for AMC's alleged tortious interference with Plaintiff's business relationship with the students of Delaware State University (Count III). Plaintiff has failed to state a claim on either of these counts. First, Plaintiff's declaratory judgment action is nothing more than an improper attempt to ask this Court for a declaration that Plaintiff's past conduct was proper under the parties' agreements and that AMC's conduct was not. Plaintiff is not entitled to such declaratory relief because (a) this declaratory judgment action serves no purpose where all of the factual and legal issues are before Court as a result of Plaintiff's claim for breach of contract and Defendant's counterclaim for breach of the same agreements; and (b) Plaintiff has not pled, nor can Plaintiff show, the requisite uncertainty or insecurity warranting declaratory relief where the contractual relationship at issue has terminated and all rights and damages have accrued. Second, Plaintiff's claim for tortious interference should also be dismissed because Plaintiff (a) has failed to adequately plead several requisite elements of a tortious interference claim and (b) AMC is not a stranger to the contracts or business relationships with which it has allegedly interfered. For these reasons, this Court should dismiss Counts I and III of Plaintiff's Complaint for failure to state a claim.

1

**STATEMENT OF FACTS**

The Foundation and AMC entered into agreements whereby AMC agreed to manage, maintain and operate the Foundation's two student housing properties, the University Courtyard Apartments (the "Courtyard") and the University Village (the "Village'), at Delaware State University ("DSU").  Specifically, the Foundation entered into an Amended and Restated Management Agreement with AMC on or about January 1, 2004, appointing AMC as an independent contractor to manage and lease the Courtyard property (the "Courtyard Agreement").  A true and accurate copy of the Courtyard Agreement is attached to the Complaint as Exhibit A.  Similarly, the Foundation also entered into an Amended and Restated Management Agreement with AMC on or about August 1, 2005, appointing AMC as an independent contractor to manage and lease the Village property (the "Village Agreement").  A true and accurate copy of the Village Agreement is attached to the Complaint as Exhibit B.

Pursuant to the Courtyard Agreement and the Village Agreement (collectively the "Management Agreements"), AMC was to provide all services reasonably necessary, proper, desirable and appropriate for the successful management and operation of the University Courtyard Apartments and the University Village (the "DSU Properties") in a "First Class Manner" as that term is defined by the Management Agreements.  Each of the Management Agreements expired on July 31, 2016.  The Management Agreements required the Foundation to cooperate with AMC in all matters related to the management, leasing, and operation of the property and provided that AMC be given proper notice of any default and the opportunity to cure.  In accordance with its obligations under the Management Agreements, AMC provided all services reasonably necessary, proper, desirable and appropriate for the successful management and operation of the DSU Properties in a First Class Manner, prior to the Foundation's wrongful termination of the agreements.

2

After Mr. Amir Mohammadi, the new Vice President of Student Affairs and President of the Foundation, was hired in the Summer of 2006, the Foundation made it increasingly clear that it was seeking to get out of its long term contractual arrangement with AMC and take over the management of the properties itself.  On August 20, 2007, AMC received a letter from Mr. Mohammadi dated August 17, 2007, which purported to give notice of a list of items that the Foundation considered instances of default and attached pictures of the units in need of repair. However, the Foundation repeatedly interfered with AMC's efforts to remedy the alleged defaults and prevented AMC from effectively managing the DSU Properties.  By September 4, 2007, all the alleged instances of default listed in August 17, 2007 letter had been repaired or remedied.

On September 12, 2007, AMC received a letter from Mr. Mohammadi stating that the Foundation was exercising its right to terminate both agreements, effective immediately.  A true and accurate copy of the September 12, 2007, letter is attached to the Complaint as Exhibit I. The Foundation further advised AMC that it must turn over operation of the facilities by September 21, 2007.

On September 13, 2007, one day after the Foundation's letter terminating AMC, the Foundation filed a lawsuit in the Superior Court of Kent County, Delaware.  The Complaint alleges three counts seeking a declaration that AMC was in breach and therefore properly terminated the Management Agreements, breach of contract and tortious interference with business relations.  Prior to the filing of the instant Motion, AMC removed the action to this Court from the Superior Court of the State of  Delaware in and for Kent County.  AMC is filing contemporaneously herewith its Answer, Affirmative Defenses, and Counterclaim.  AMC is counterclaiming for breach of the Management Agreements and tortious interference with

3

AMC's business relations with AMC's employees.  For the reasons below, AMC now seeks

dismissal of Counts I (Declaratory Judgment) and Count III (Tortious Interference) of the

Foundation's Complaint.

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

Counts I and III of Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ.

Proc. 12(b)(6) because Plaintiff has failed to state a claim for declaratory judgment relief or for

tortious interference with business relations.

## I.    THE MOTION TO DISMISS STANDARD

"The standard which a court must apply in deciding a motion to dismiss pursuant to Rule

12(b)(6) is that all material allegations of the complaint must be accepted as true and the court

must construe the complaint in favor of the plaintiff."  <u>R.W. ex rel. Williams v. Delaware Dept.</u>

<u>of Educ.</u>, 2007 WL 2213598, *3 (D. Del. Aug. 2, 2007) (citing <u>Trump Hotels & Casinos Resorts,</u>

<u>Inc. v. Mirage Resorts, Inc.</u>, 140 F.3d 478, 483 (3d Cir.1998)).  The District of Delaware has

further articulated the applicable standard as follows:

> Additionally, a complaint must contain "'a short and plain statement of the claim
> showing that the pleader is entitled to relief,' in order to 'give the defendant fair
> notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl.</u>
> <u>Corp. v. Twombly</u>, --- U.S. ----, 127 S. Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)
> (omission in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2
> L.Ed.2d 80 (1957)).  A complaint does not need detailed factual allegations;
> however,  "**a plaintiff's obligation to provide the 'grounds' of his
> 'entitle[ment] to relief <u>requires more than labels and conclusions', and a
> formulaic recitation of the elements of a cause of action will not do</u>.**"  <u>Id</u>. at
> 1964-65 (alteration in original) (citations omitted).  **The "[f]actual allegations
> must be enough to raise a right to relief above the speculative level on the
> assumption that all of the allegations in the complaint are true (even if
> doubtful in fact)**."  <u>Id</u>. at 1965 (citations omitted).

<u>Anderson v. Wachovia Mortg. Corp.</u>, 497 F. Supp. 2d 572, 578 (D. Del. 2007) (emphasis added).

"[T]he court should reject unsupported allegations, 'bald assertions', or 'legal conclusions'"

when deciding a motion to dismiss.  <u>Amiot v. Kemper Ins. Co.</u>, 122 Fed Appx. 577, 579, 2004

4

WL 2943983 (3d Cir. 2004) (citing <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1998)).

As shown below, Counts I and III should be dismissed for failure to state a claim because even taking all of the facts alleged by Plaintiff as true, Plaintiff has not stated a claim for declaratory relief or for tortious interference.

## II.     PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF.

Plaintiff has failed to state a proper claim for declaratory relief because Plaintiff, having terminated the parties' Management Agreements and sued for breach of the same, has no insecurity or uncertainty.  The instant action will serve no useful purpose where both parties' claims for breach of contract are before the Court and all of the factual and legal issues raised by Count I will be resolved as a result of litigating the parties' respective claims for breach.  The Plaintiff's claim for declaratory relief is merely an attempt to seek a ruling of this Court that its past conduct was proper.  However, no such relief is available and is contrary to the purpose and spirit of the Act.  Plaintiff's declaratory judgment claim should therefore be dismissed.

### A.     The Declaratory Judgment Act and Applicable Law

The federal Declaratory Judgment Act (the "Act")[1] provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

---

[1]Although Plaintiff's claim for declaratory judgment was brought pursuant to Delaware State law, the Federal Declaratory Judgment Act will now control the Plaintiff's declaratory judgment claim.  "An action for declaratory judgment is procedural in nature and purpose.  A federal court exercising diversity jurisdiction follows federal procedural rules and, thus, federal law determines the rules to apply to a request for declaratory judgment relief in a given case." <u>Munich Welding, Inc. v. Great American Ins. Co.</u>, 415 F. Supp. 2d 571, 574-75 (W.D. Pa. 2006) (citing <u>Federal Kemper Ins. Co. v. Rauscher</u>, 807 F.2d 345, 352 (3d Cir.1986) (holding that "it is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment apply in diversity cases").

28 U.S.C. § 2201(a).  "Whether to grant relief pursuant to section 2201 is vested in the court's discretion.  'Although the threat of legal action may present a real controversy . . . the remedy of a declaratory judgment is discretionary even where a justiciable controversy exists.'"  Gruntal & Co., Inc. v. Steinberg, 837 F. Supp. 85, 89 (D.N.J. 1993) (quoting Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1170 (3rd Cir. 1987).

Declaratory relief is inappropriate where it "will not serve a useful purpose or is otherwise undesirable."  Gruntal, 867 F. Supp. at 89.  In making this determination, a court "'must ask whether the requested declaratory judgment will *(1) clarify and settle legal relations in issue and (2) terminate and afford greater relief from the uncertainty, insecurity, and controversy giving rise to present action*.'"  Id. (emphasis added) (quoting United Sweetener USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 216 (D. Del.1991)).  Where a party is insecure or uncertain as to its rights and obligations, declaratory relief serves to allow parties to prevent the "accrual of avoidable damages" where the declaration "would strongly affect present behavior, have present consequences and resolve a present dispute."  ACandS v. Aetna Cas. & Sur. Co., 666 F.2d 819, 823 (3d Cir. 1981).

Because the Act is intended to provide clarification and certainty to those who are uncertain as to their rights and who desire such clarification prior to acting to their own potential detriment, a proper claim for declaratory relief also contains a temporal component.  That is, "[t]he Act was designed to enable parties to clarify their rights *before* they act[]."  Alpine Group, Inc. v. Johnson, 2002 WL 10495, *4 (S.D.N.Y. 2002) (emphasis added) (dismissing action by employer which requested declaration that its terminating employee was proper).  In contrast, declaratory relief is not available "to adjudicate *past conduct, such as when damages have already accrued*."  MOORE'S FEDERAL PRACTICE, § 57.04[3] (3d ed. 2006) (emphasis added).

"The Act was meant to settle legal rights '*without awaiting a violation of the rights or a disturbance of relationships*.'  It was not meant, however, to prevent the cost of litigating where such violations or disturbances have already occurred.'"  Crown Cork & Seal Co., Inc. v. Borden, Inc., 779 F. Supp. 33, 36 (E.D. Pa. 1991) (emphasis added) (quoting Beacon Const. Co., Inc. v. Matco Elec. Co., Inc., 521 F.2d 392, 397 (2nd Cir.1975)); see also MOORE'S FEDERAL PRACTICE, § 57.04[3] (3d ed. 2006) ("[D]eclaratory judgment relief creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that *has not reached a stage at which either party may seek a coercive remedy or in which a party entitled to a coercive remedy fails to sue*.") (emphasis added).

Thus, where a party has taken a position as to its rights and it has acted pursuant to those claimed rights, as the Foundation has done in the instant case, declaratory relief is unavailable to obtain a ruling that the parties' past conduct was proper.  "'[I]t is not one of the purposes of the declaratory judgment acts to enable a prospective . . . defendant to obtain a declaration of non-liability.'"  Envirometrics Software, Inc. v. Georgia-Pacific Corp., 1997 WL 699328, *3 (D. Del. 1997) (quoting Sun Oil Co v. Transcontinental Gas Pipe Line Corp., 108 F. Supp. 280, 282 (E.D. Pa.1953).

   **B.    Plaintiff's Declaratory Judgment Claim Should Be Dismissed Because Plaintiff Is Improperly Attempting to Have Its Past Conduct Declared Proper Under Circumstances Where Declaratory Relief Serves No Useful Purpose and Where Plaintiff Has No Future Uncertainty or Insecurity.**

The subject of this lawsuit is the parties' past conduct, which Plaintiff is requesting that this Court declare proper.  As discussed above, declaratory relief is inappropriate where it serves no useful purpose and where Plaintiff cannot show the requisite insecurity or uncertainty.  See Gruntal, 837 F. Supp. at 89.  At its core, this is a breach of contract case with both parties alleging that the other breached the same agreements.  Count II of Plaintiff's Complaint alleges

7

that AMC breached its obligations under the Management Agreements by certain alleged failures to sufficiently maintain the premises and to enforce lease terms.  On the other hand, Count I of AMC's Counterclaim alleges that Plaintiff breached the Management Agreements by, inter alia, improperly terminating the Management Agreements without justification and failing to live up to its obligation to cooperate with AMC.  By terminating the Management Agreements, Plaintiff took the position that it was not uncertain as to its rights and that it was not seeking declaratory relief to prevent unnecessary harm or damages prior to potentially detrimental conduct.  Plaintiff, without first seeking a declaration of its rights, terminated the Management Agreements, and the damage to AMC was done.  Declaratory relief is not available to declare that Plaintiff's conduct was proper.

The case law makes clear that where, as here, the parties contractual relationship has been terminated and the parties have taken clear positions as to the other's liability for breach, declaratory relief is not available to ease insecurity related to future defense costs.  Plaintiff's request for declaratory relief is analogous to that of the plaintiff in Crown Cork.  See  Crown Cork, 779 F. Supp. at 36.  In Crown Cork, Crown Cork & Seal Company, Inc. ("Crown"), the manufacturer of aluminum aerosol paint cans, brought a declaratory judgment action against the purchaser of the aluminum cans, who had requested reimbursement of costs related to a recall of defective cans.  Id. at 34.  After an unsuccessful attempt to resolve the dispute, Crown sought a declaration that, inter alia, its cans were not defective and that it did not breach its warranties or contracts with the purchaser.  Id.  Crown argued that declaratory relief would serve the purpose of avoiding the unnecessary accrual of expenses in defending itself in the event that the purchaser brought suit.  Id.at 36.  Rejecting this argument and others and dismissing the declaratory judgment action, the court explained:

8

> I reject Crown's proposition that its potential litigation costs are the type of "accruing damage" the Declaratory Judgment Act intended to curtail. The Act *was meant to settle legal rights "without awaiting a violation of the rights or a disturbance of relationships." It was not meant, however, to prevent the cost of litigating where such violations or disturbances have already occurred*.

Id. (emphasis added) (quoting Beacon Const. Co., Inc. v. Matco Elec. Co., Inc., 521 F.2d 392, 397 (2nd Cir. 1975)).  The court further explained that the because "Crown and [the purchaser's] contract dealings are over[,] [t]here is no 'present behavior' to affect, regarding the rights or future conduct of either Crown or [purchaser] under the contract." Crown Cork, at 36, n.3 (citing ACandS v. Aetna Cas. & Sur. Co., 666 F.2d at 823); see also Alpine Group, Inc. v. Johnson, 2002 WL 10495, *4 (S.D.N.Y. 2002) (dismissing action by employer which requested declaration that its terminating employee was proper and holding that "Plaintiff's claim also runs counter to the purposes underlying the [Act]. *The Act was designed to enable parties to clarify their rights <u>before</u> they acted*.  [cit.]  Here, however, plaintiff has already terminated [employee], and now it seeks declaratory relief stating that its action was proper." (emphasis added)).

Likewise, in Envirometrics, the District of Delaware dismissed a declaratory judgment action seeking declaration that the plaintiff was not in breach of a software license agreement. Envirometrics, at *3.  In rejecting the plaintiff's attempt to "obtain a judgment of non-liability," the court found insufficient uncertainty and insecurity, "*especially where (as here) the conduct at issue was already complete and the damages record thus established*." Id. at *4 (emphasis added).

As in Crown Cork and Envirometrics, Count I of Plaintiff's Complaint also improperly asks this Court to declare its <u>past</u> conduct proper.  This declaration serves no purpose where Plaintiff has not pled and cannot show any insecurity or uncertainty as to its future conduct.  All damages and rights have fully accrued, and the parties' relationship has been terminated.  All of

the legal and factual issues raised by this request for declaratory relief are now before the Court as both parties have brought suit for breach of the Management Agreements. The issue of whether the Plaintiff's conduct in terminating the parties' contractual relationship was proper is the subject of the parties' respective claims for breach, not the subject of a proper claim for declaratory relief. Therefore, this Court should refuse to exercise its discretion in entertaining Count I of the Complaint and should dismiss Count I for failure to state a claim.

## III.    PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD A CLAIM FOR TORTIOUS INTERFERNCE

Even accepting the allegations in the Complaint as true, Plaintiff has still failed to adequately plead facts or state a claim for tortious interference with business relations and therefore, Count III of the Complaint should be dismissed. Plaintiff has (1) failed to plead that any alleged interference by AMC caused the DSU students to breach or terminate their leases or "business relationships" with the Foundation, (2) failed to plead that any actions taken by AMC were intentionally done to interfere with the Foundation's contracts or relationships with the students, and (3) failed to plead facts that support the Plaintiff's bald assertions and conclusory allegations that its relationship with the students or its reputation has been damaged. Finally, Plaintiff's claim for tortious interference should be dismissed because AMC is not a stranger to the contracts or business relationships that it has allegedly interfered with.

### A.    Elements of a Tortious Interference Claim.

Delaware law recognizes two types of tortious interference claims, both of which Plaintiff has failed to adequately plead. "Delaware Courts follow the definition of tortious interference with advantageous relationships found in the Second Restatement." Corning Inc. v. SRU Biosystems, LLC, 292 F. Supp. 2d 583, 585 (D. Del. 2003). "Tortious interference with

10

advantageous relationships encompasses two torts: tortious interference with contract and tortious interference with prospective contractual relations." Id.

"To prevail on a claim for tortious interference with an existing contract, a party must demonstrate: (1) the existence of a contract, (2) about which the interferer knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) causes injury." Griffin Corporate Services, LLC v. Jacobs, 2005 WL 2000775, *4,  (Del. Ch. 2005) (citing Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983 (Del. Ch. 1987). "The elements of tortious interference with prospective contractual relations include (1) the existence of a valid business relation or expectancy, (2) the interferer's knowledge of the relationship or expectancy, (3) intentional interference that (4) induces or causes a breach or termination of the relationship or expectancy and that (5) causes resulting damages to the party whose relationship or expectancy is disrupted." Corning Inc., 292 F. Supp. 2d at 585.  Plaintiff's Complaint is so woefully inadequate that AMC cannot determine which theory or variation of tortious interference Plaintiff is seeking to recover under.  Even so, taking all the allegations in the Complaint as true, Plaintiff has failed to adequately plead facts that support the essential elements of either variation of a tortious interference claim.

> **B.    Plaintiff's Tortious Interference Claim Should Be Dismissed Because the Complaint Fails to Adequately Plead Breach of Contract or Termination of the Business Relationship.**

Breach of an underlying contract or termination of a business relationship are essential elements of either type of tortious interference claim, and failure to allege breach or termination dictates dismissal of such inadequately pled claims.  "***To state a tortious interference claim, a plaintiff must properly allege an underlying breach of contract***.  Because [Plaintiff] has not done so, its tortious interference claim fails." Allied Capital Corp. v. GC-Sun Holdings, L.P., 910 A.2d 1020, 1036 (Del. Ch. 2006) (emphasis added). "The tort of interference with a contract

11

requires 'an intentional act that is a significant factor in causing the breach of contract.' ***Without a breach, there is no viable tortious interference claim***. As to this point, Delaware law is well-settled." <u>TruePosition, Inc., v. Allen Telecom, Inc.</u>, 2003 WL 151227, *2 (D. Del. 2003) (emphasis added). "***According to Delaware law, to succeed under a tortious interference with contract theory, there must be an actual breach of a valid and enforceable contract*** . . . However, termination of a contract is not the same as breach of contract." <u>Luscavage v. Dominion Dental USA, Inc.</u>, 2007 WL 901641, *2 (Del. Super. 2007) (emphasis added).

The following statements contained in the Complaint are the extent of Plaintiff's allegations regarding its tortious interference claim:

- The Foundation maintains the Courtyard and the Village Apartments for the benefit of DSU students, with whom they have a ***contractual relationship*** to provide, safe, clean and appropriate housing. <u>See</u> Complaint, ¶ 76 (emphasis added).

- Ambling's intentional failure to fulfill its obligations under the Management Agreements has adversely interfered with the Foundation's ***relationship*** with the DSU students whom it serves. <u>See</u> Complaint, ¶ 77 (emphasis added).

- Ambling's breach of the Management Agreements is the proximate cause of the damage the foundation has sustained to its ***relationship*** with DSU students. <u>See</u> Complaint, ¶ 78 (emphasis added).

- As a result of Ambling's intentional interference, the Foundation has suffered undetermined damages to its reputation. <u>See</u> Complaint, ¶ 79.

Although Plaintiff does allege that it has a contractual relationship with the DSU students, suspiciously absent is an allegation that any DSU student has terminated, much less breached his or her lease with the Foundation due to the actions of AMC.

In <u>Griffin Corp. Servs., LLC v. Jacobs</u>, 2005 WL 2000775 (Del. Ch. 2005), the court dismissed the counterclaim plaintiff's tortious interference claim because plaintiff failed to allege breach of any contract. The court held:

> Though a complaint need only to contain 'a short and plain statement of the claim showing that a pleader is entitled to relief,' ***an allegation of a breach is necessary to show entitlement to relief for tortious interference with an existing contract*** . . . the Counterclaim, however, alleges no breach of employment agreements . . . Counterclaim Plaintiffs ***only allege*** that Griffin and Counterclaim Defendants '***intentionally interfered with*** employment ***relationships*** . . . and fiduciary duties' not any employment agreements.

Griffin Corp. Servs., 2005 WL 2000775 at *4 (emphasis added).  Just like the Counterclaim

Plaintiffs in Griffin, Plaintiff in the instant case has only alleged an interference "with the

Foundation's ***relationship*** with the DSU students whom it serves," not with any contract.  See

Complaint, ¶ 77.  To the extent Plaintiff attempted to allege a claim for tortious interference with

an existing contract, Plaintiff has failed to allege the necessary element of breach of any contract

by DSU students as a result of any alleged conduct by AMC.  Therefore, Plaintiff's tortious

interference claim should be dismissed.

To the extent Plaintiff seeks to allege a claim for tortious interference with prospective

business relationships, the Plaintiffs allegations suffer from the same fatal flaw.  A claim for

tortious interference with prospective business requires an "intentional interference that induces

or causes a breach or termination of the relationship or expectancy." Corning Incorporated, 292

F. Supp. 2d at 585. See also Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc., 5 F. Supp. 2d 238,

243 (D. Del. 1998).  Again, Plaintiff has failed to allege that any alleged actions by AMC

"induced or caused a breach or termination of the relationship or expectancy" and therefore has

failed to state a claim for tortious interference.  Moreover, since Plaintiff has admitted that it has

an ongoing "contractual relationship" with the DSU students, a claim for interference with

"prospective business relations" is improper and should be dismissed.

      **C.**    **Plaintiff's Tortious Interference Claim Should Be Dismissed Because the Complaint Fails to Adequately Plead Any Actions Taken by AMC to Intentionally Interfere with Plaintiff's Relationship with DSU Students.**

13

In attempting to plead a tortious interference claim, Plaintiff has done nothing more than re-plead another version of its alleged breach of contract claim.

> Under Delaware law, a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort. In preventing gratuitous "bootstrapping" of contract claims into tort claims, courts recognize that a breach of contract will not generally constitute a tort. ***Even an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself.*** Rather, a tort usually involves violation of a duty which arises "by operation of law and not by the mere agreement of the parties."

Data Mgmt. Int'l, Inc. v. Saraga 2007 WL 2142848, *3 (Del. Sup. 2007) (emphasis added).

Both variations of the tort of tortious interference recognized by Delaware law require the Plaintiff to plead that the interferer committed an intentional act to interfere with the Plaintiff's contract or relationship. See Corning Incorporated, 292 F. Supp. 2d at 585; Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983 (Del. Ch. 1987). The Complaint fails to plead that any actions taken by AMC were intentionally done to interfere with the Foundation's contracts or relationships with the DSU students. The only allegation made by the Plaintiff is that AMC "intentional[ly] fail[ed] to fulfill its obligations under the Management Agreements" (i.e. that AMC breached its contract with the Plaintiff), and that as a result of such alleged breach, Plaintiff's relationship with the DSU students has been "adversely interfered with". See Complaint, ¶ 77. AMC's "interfering act" of supposedly failing to fulfill its obligations under its contract with the Plaintiff is already serving as the basis of Plaintiff's breach claims, and Plaintiff is not allowed to improperly "bootstrap" its breach claim into a tortious interference claim. In Count III of the Complaint, Plaintiff has only alleged, if anything, another variation of its breach of contract claim against AMC, and some highly speculative articulation of supposed damages that reach far beyond the realm of reasonable and certain calculation. Such allegations cannot

14

support a separate cause of action for tortious interference, and therefore, Plaintiff's claim for tortious interference should be dismissed.

**D.  Plaintiff's Tortious Interference Claim Should Be Dismissed Because the Complaint Fails to Adequately Plead Facts to Support Plaintiff's Conclusory Allegation of Resultant Damages.**

Plaintiff's tortious interference claim should be dismissed because Plaintiff has failed to allege facts to support its allegation of damages. "Conclusions of law or fact unsupported by factual allegations will not be assumed to be true." Griffin Corp. Servs., 2005 WL 2000775 at *5.  In Griffin Corporate Services, after the court found that the counterclaim plaintiffs had failed to adequately plead breach of contract to support their tortious interference claim, it also found that the counterclaim plaintiffs had failed to adequately plead facts in support of their damages. The court held:

> Additionally, Counterclaim Plaintiffs pled no facts to support their claim that they were damaged as a result of a breach of the employment agreements. The only allegation of damage Counterclaim Plaintiffs makes states that "[a]s a result of [Counterclaim Defendant's] intentional interference with existing and prospective business relationships, Defendants have been damaged." Conclusions of law or fact unsupported by factual allegations will not be assumed as true.  Thus, ***because Counterclaim Plaintiffs failed to allege any breach of the employment agreements or support their conclusory allegation of resultant damages, I grant . . . Counterclaim Defendants' motion to dismiss the counterclaim for tortious interference*** . . .

Griffin Corp. Servs., 2005 WL 2000775 at *5 (emphasis added).

Plaintiff, like the counterclaim plaintiffs in Griffin Corporate Services, failed not only to plead breach of any contract, but also failed to plead *facts* to support its claim for damages. Plaintiff's sole allegation relating to damages states, "As a result of Ambling's intentional interference, the Foundation has suffered undetermined damages to its reputation."  See Complaint, ¶ 79.  Clearly absent from this statement, and from the entire Complaint, are any factual allegations supporting how the Plaintiff, or its reputation, was damaged.  Moreover,

15

because Plaintiff has failed to allege any DSU students breached, or even terminated their lease

contracts with Plaintiff, Plaintiff cannot credibly claim, and has not claimed, that it has been

damaged by such non-existent breach or termination.  As such, Plaintiff's claim for tortious

interference should be dismissed.

> **E.    Plaintiff's Tortious Interference Claim Should Be Dismissed Because AMC is Not a Stranger to the Contractual and Business Relationships It Allegedly Interfered With.**

Plaintiff's claim for tortious interference should be dismissed because AMC is not a

stranger to the contractual or business relationships between the Plaintiff Foundation and the

DSU students.  Under Delaware law, "[i]mposition of liability for tortious interference with

contractual relationship requires that the defendant 'be a stranger to both the contract and the

business relationship giving rise to the underpinning the contract." Tenneco Automotive, Inc. v.

El Paso Corp., 2007 WL 92621, *5 (Del. Ch. 2007).  The Complaint alleges:

- Specifically Ambling is required to: [O]ffer space in the premises and ***use its best efforts to cause the space in the Premises to be fully leased*** . . . to Tenants which are Eligible Tenants who are  Creditworthy on the best terms available for [the Foundation], acting in the best interest of [the Foundation]. See Complaint, ¶ 11 (emphasis added).

- As a part of its leasing duties, ***Ambling is required to ensure each tenant within the Courtyard and Village signs a written lease***, and abides by the terms of that release. See Complaint, ¶ 12 (emphasis added).

As clearly demonstrated by Plaintiff's allegations, not only was AMC not a stranger to the very

contracts and relationships is has allegedly interfered with, it was the party responsible for

securing and maintaining those leases and relationships with the DSU students on behalf of the

Foundation.  Moreover, because AMC was responsible for securing leases on behalf of the

Plaintiff, AMC signed the leases as an agent for the Plaintiff, making it a party to the contracts it

allegedly interfered with.  This fact alone dictates dismissal of Plaintiff's tortious interference

16

claims. "After all, '[a] defendant cannot interfere with its own contract."  <u>Tenneco Automotive, Inc.</u>, 2007 WL 92621 at *5.

## <u>CONCLUSION</u>

Plaintiff's claims for declaratory judgment should be dismissed because the declaratory relief is not available to declare past conduct proper where damages have accrued and where the declaration would serve no useful purpose.  Plaintiff's tortious interference claim should also be dismissed because it has been inadequately pled and suffers from the fatal flaw that AMC was not a stranger to the relationships with which it has allegedly interfered.  For the reasons stated herein, AMC respectfully requests that this Court dismiss Count I and Count III of Plaintiff's Complaint.

WCSR 3751560v5

Respectfully submitted this 16th day of November, 2007.

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
*A Professional Limited Liability Company*

By:    /s/  AnnaMartina Tyreus _____
          Gerard M. O'Rourke(DE #3265)
          Anna Martina Tyreus (DE # 4771)
          222 Delaware Avenue, 15th Floor
          Wilmington, DE 19801
          Main Number: (302) 252-4320
          Main Fax: (302) 252-4330
          gorourke@wcsr.com
          mtyreus@wcsr.com

          Robert R. Ambler, Jr. (GA #014462)
          John G. Perry (GA#141609)
          **WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
          One Atlantic Center, Suite 3500
          1201 West Peachtree Street
          Atlanta, Georgia 30309
          Phone: (404) 872-7000
          Fax: (404) 888-7490
          rambler@wcsr.com
          joperry@wcsr.com

          *Attorneys for Ambling Management Company*

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the within and foregoing has been served upon counsel of record by placing same in the United States postal service with proper postage affixed thereto and addressed to the following:

> Kathleen Furey McDonough
> Sarah E. DiLuzio
> Potter Anderson & Corroon, LLP
> 1313 N. Market Street
> P.O. Box 951
> Wilmington, DE 19899-0951
> (302)984-6000

This 16th day of November, 2007.

> /s/  AnnaMartina Tyreus _____
> Anna Martina Tyreus (DE # 4771)

19