IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELAWARE STATE UNIVERSITY STUDENT HOUSING FOUNDATION, a Delaware Corporation,<br><br>   Plaintiff,<br><br>v.<br><br>AMBLING MANAGEMENT COMPANY,<br><br>   Defendant. | )<br>)<br>)<br>)  C.A. NO. 07-610<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT AMBLING MANAGEMENT COMPANY'S REPLY
BRIEF IN SUPPORT OF ITS MOTION TO DIMISS**

> Gerard M. O'Rourke(DE #3265)
> Anna Martina Tyreus (DE # 4771)
> **WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
> 222 Delaware Avenue, 15th Floor
> Wilmington, DE 19801
> Main Number: (302) 252-4320
>
> Robert R. Ambler, Jr. (GA #014462)
> John G. Perry (GA #141609)
> One Atlantic Center, Suite 3500
> 1201 West Peachtree Street
> Atlanta, Georgia 30309
> Phone: (404) 872-7000
>
> *Attorneys for Ambling Management Company*

Date:   November 26, 2007

## TABLE OF CONTENTS

I. PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF ........................................ 1

II. PLAINTIFF FAILED TO ADEQUATELY PLEAD A CLAIM FOR TORTIOUS INTERFERENCE. ................................................................................................................ 3

    A. Plaintiff Did Not Adequately Plead Termination of a Relationship or Expectancy ................................................................................................................ 3

    B. Plaintiff Did Not Adequately Plead Actions Taken by AMC to Intentionally Interfere with Plaintiff's Future Relationships with DSU Students ................................................................................................................ 4

    C. Plaintiff Did Not Adequately Plead Facts to Support Its Conclusory Allegation of Resultant Damages ................................................................................................................ 5

III. AMC IS A NOT A STRANGER TO THE CONTRACTUAL AND BUSINESS RELATIONSHIPS IT ALLEGEDLY INTERFERED WITH ................................................................................................................ 6

IV. CONCLUSION ................................................................................................................ 7

## TABLE OF AUTHORITIES

**Cases**

Alpine Group, Inc. v. Johnson, 2002 WL 10495 (S.D.N.Y. 2002) ............................................... 2

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) .............................................................. 4

Burger King Corp. v. Family Dining, Inc., 426 F.Supp. 485 (E.D. Pa. 1977), aff'd
   without opn, 566 F.2d 1168 (3d Cir. 1977) ............................................................................... 1

Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir.1984) ........................................... 4

Conley v. Gibson, 355 U.S. 41 (1957) ............................................................................................ 4

Crown Cork & Seal Co., Inc. v. Borden, Inc., 779 F. Supp. 33 (E.D. Pa. 1991) ............................ 2

Data Mgmt. Int'l, Inc. v. Saraga, 2007 WL 2142848 (De. Sup. 2007) ........................................... 5

Envirometrics Software, Inc. v. Georgia-Pacific Corp., 1997 WL 699328 (D. Del. 1997) ........... 2

Enzo Life Sciences , Inc. v. Digene Corp, 295 F. Supp.2d 424 (D. Del. 2003) ......................... 5, 6

Griffin Corp. Servs. v. Jacobs, 2005 WL 2000775 (Del. Ch. 2005) ........................................... 5, 6

Tenneco Automotives, Inc. v. El Pason Corp., 2007 WL 92621 (Del. Ch. 2007) ...................... 6, 7

**Other Authorities**

MOORE'S FEDERAL PRACTICE (3d ed. 2006) ................................................................................... 2

Breach of contract is the sole issue properly raised by Plaintiff in this case. Plaintiff's request for declaratory relief is improper because it asks the court to rule on Plaintiff's past conduct in terminating the Management Agreements between the parties. Because both parties' breach of contract claims are now before the Court, the case law dictates that relief is not available to Plaintiff under the Declaratory Judgment Act. In addition, Plaintiff's allegations of intentional interference are wholly lacking as to what business relationships were interfered with, what intentional acts AMC committed, and what damages Plaintiff incurred.

**I.     PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF**

Plaintiff essentially concedes that declaratory judgment is not appropriate because the alleged uncertainties that Plaintiff spells out in its brief are now moot. The Foundation argues it was "laboring with uncertainty regarding Ambling's response to its decision to terminate," that it "did not know whether Ambling would agree to vacate the premises or cooperate with the transition of property management to the Foundation," and that it did not "know whether Ambling would challenge the termination." (D.I. 8 at 10). All of these uncertainties have now been addressed. AMC has counter sued for breach of contract. AMC did vacate the premises and transitioned the property management to the Foundation. AMC has disputed the termination as improper, and this dispute will be litigated in AMC's breach of contract counterclaim.

AMC agrees that declaratory judgment is a proper vehicle for a court's interpretation of a contract before the contract is terminated and when the party's rights remain uncertain, as demonstrated by the case law cited by Plaintiff. See, e.g., Burger King Corp. v. Family Dining, Inc., 426 F. Supp. 485, 487 (E.D. Pa. 1977) (declaratory judgment plaintiff seeking a ruling that defendant's actions rendered the contract terminated), aff'd without opn, 566 F.2d 1168 (3d Cir. 1977). However, unlike Burger King, there is no question that the Foundation has terminated the

1

Management Agreements.  Plaintiff fails to cite case law to support its position that a party can terminate a contract and then bring a declaratory judgment action asking the court to hold that the party's actions were proper.

In fact, the case law is to the contrary and unequivocally holds that the Declaratory Judgment Act "was designed to enable parties to clarify their rights *before* they act[]."  Alpine Group, Inc. v. Johnson, 2002 WL 10495, *4 (S.D.N.Y. 2002) (emphasis added).  Plaintiff acted by terminating the agreement.  Because the contract dealings are over, "there is no 'present behavior' to affect, regarding the rights or future conduct of [the parties] . . . under the contract."  Crown Cork & Seal Co., Inc. v. Borden, Inc., 779 F. Supp. 33, 36 (E.D. Pa. 1991).  The only uncertainty that remains for Plaintiff is the litigation of the breach of contract claims and counterclaims.  Potential litigation costs are not the type of "accruing damages" the Act intended to curtail.  Crown Cork, 779 F. Supp. at 36.

Plaintiff's termination provided AMC with a cause of action to bring coercive suit.  Therefore, Plaintiff's declaratory judgment is untimely because it was filed after AMC was in a position to bring a coercive suit and improper as anticipatory of Ambling's claim.  See MOORE'S FEDERAL PRACTICE, § 57.04[3] (3d ed. 2006); Envirometrics Software, Inc. v. Georgia-Pacific Corp., 1997 WL 699328, *4 (D. Del. 1997) ("Plaintiff ESI's declaratory judgment action clearly was filed in anticipation of a coercive action by [defendant] and, as such, constitutes an improper use of the declaratory judgment remedy . . .").

Plaintiff's final argument that it should not be deprived of remedy just because it terminated the parties' agreements before it sued is misleading and incorrect.  Plaintiff is not deprived of a remedy because, as it has demonstrated by bringing this lawsuit, it has a remedy by

2

virtue of its breach of contract claim. Plaintiff does not have a remedy in the form of declaratory judgment precisely because it terminated the parties' agreements.

## II. PLAINTIFF FAILED TO ADEQUATELY PLEAD A CLAIM FOR TORTIOUS INTERFERENCE.

Plaintiffs concedes that it has no claim for tortious interference with contract. (D.I. 8 at 11-14) ("The Foundation's claim is for intentional interference with *prospective* business relations") (original emphasis). Plaintiff's Complaint remains deficient regarding the tort of intentional interference with perspective contractual relations for three reasons: (1) Plaintiff failed to adequately plead termination of a relationship or expectancy; (2) Plaintiff failed to adequately plead an act of intentional interference by Ambling; and (3) Plaintiff failed to adequately plead resulting damages.

### A. Plaintiff Did Not Adequately Plead Termination of a Relationship or Expectancy

Plaintiff failed to plead termination of any business relationship with future students which the Foundation claims as an expectancy. As Plaintiff cites in its own brief, the Complaint states:

> 77.   Ambling's intentional failure to fulfill its obligations under the Management Agreement has adversely interfered with the Foundation's relationship with the DSU students whom it serves.

(D.I. 1, ¶ 77; D.I. 8 at 11) Thus, Plaintiff only pleads an "interference" with its current "relationships." Plaintiff never pleads a termination of its business relationships. In its brief, Plaintiff attempts to flesh out its Complaint by arguing that it "is unable to identify whether any existing tenants failed to renew their lease, or whether any potential tenants decided to live elsewhere . . .." (D.I. 8 at 12) But Plaintiff never pled in its Complaint that tenants failed to

3

renew leases or decided to live elsewhere, which is language directed to termination of these business relationships. Plaintiff is bound by its inadequately pled allegations.

Plaintiff improperly relies on Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) and asks the Court to *infer* that there is a possibility that future students might choose not rent from Foundation, who is now operating and managing the properties, due to AMC's alleged past mismanagement. Plaintiff's reliance on Twombly is misplaced. First, the language cited by Plaintiff regarding "inferential" allegations was not the language or the holding of the Supreme Court. Plaintiff's cited language is from Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir.1984), cited by the Supreme Court in a string cite questioning a narrow standard that permits dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 127 S. Ct. at 1968-69 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Second, Twombly ultimately dismissed the complaint at issue because the "antitrust conspiracy was not suggested by the facts adduced under either theory of the complaint, which thus fails to state a valid § 1 claim." Twombly, 127 S. Ct. at 1973. As in Twombly, the Complaint does not at all suggest that students terminated or breached their relationship with Plaintiff.

      **B.**    **Plaintiff Did Not Adequately Plead Actions Taken by AMC to Intentionally Interfere With Plaintiff's Future Relationships with DSU Students**

Plaintiff did not plead any intentional or wrongful conduct other than the alleged breach of the Management Agreements. Paragraph 77 of the Complaint, re-stated above, only alleges that AMC's "intentional failure to fulfill its obligations under the Management Agreements" adversely interferes with Plaintiff's relationships. Plaintiff fails to reference any other independent act in its pleading. The tort of intentional interference, however, requires a wrong

4

act other than the breach of contract.  See Data Mgmt. Int'l, Inc. v. Saraga, 2007 WL 2142848, *3 (De. Sup. 2007) ("Even an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself").  And again Plaintiff attempts to correct its inadequate pleading by speculating about what the facts may show.  (D.I. 8 at 13)  But, speculation aside, Plaintiff never pled any such theory in its Complaint.

Plaintiff's suggestion that AMC's reliance on Data Management is somehow inappropriate because it was decided in the context of summary judgment is without merit. (D.I. 8 at 13; D.I. 5 at 14).  AMC is not arguing the summary judgment or motion to dismiss standard.  Rather, AMC relies upon the applicable Delaware law setting out the requirements for the intentional interference cause of action.  Requirements for a cause of action do not change depending on what stage of the case an argument is made.  Plaintiff's failure to adequately plead the independent tort of intentional interference renders dismissal appropriate.  See Griffin Corp. Servs. v. Jacobs, 2005 WL 2000775, *5 (Del. Ch. 2005) (dismissing a claim of intentional interference for inadequate pleading).

### C. Plaintiff Did Not Adequately Plead Facts to Support Its Conclusory Allegation of Resultant Damages

Plaintiff's conclusory statement of damages is deficient because Plaintiff never pled a termination of a business relationship with *prospective* DSU students.  Conclusions of law or facts unsupported by factual allegations are not assumed true.  Griffin Corp. Servs. v. Jacobs, 2005 WL 2000775, *5 (Del. Ch. 2005).  In both Griffin and Enzo, the court held that counterclaim plaintiffs adequately plead intentional interference with perspective relationships because the complaint detailed specific intentional conduct by the defendant directed toward

5

third party customers. As a result, the conclusory statement of damages resulting from that conduct was sufficient. Id.; Enzo Life Sciences , Inc. v. Digene Corp, 295 F. Supp. 2d 424, 429 (D. Del. 2003). However, when addressing the claim of intentional interference of existing contracts, the Griffin court held that because counterclaim plaintiffs neither alleged a breach of agreements nor independently supported the conclusory allegations of resultant damages, the pleading was insufficient. Griffin Corp. Servs. v. Jacobs, 2005 WL 2000775 at *5. Here, Plaintiff failed to allege specific conduct aside from AMC's alleged breach of contract, failed to adequately plead termination of prospective relationships, and failed to plead independent facts regarding damages. Therefore, Plaintiff's conclusory statement of damages cannot survive a motion to dismiss.

### III.    AMC IS A NOT A STRANGER TO THE CONTRACTUAL AND BUSINESS RELATIONSHIPS IT ALLEGEDLY INTERFERED WITH

Because Plaintiff concedes it has no tortious interference with contract claim, AMC could not possibly interfere with Plaintiff's relationship with DSU students who had a contract with Plaintiff at the time the Management Agreements were terminated. Liability for the tort of intentional interference requires that defendant be "a stranger to both the contract and the business relationship giving rise to the underpinning contract." Tenneco Automotives, Inc. v. El Pason Corp., 2007 WL 92621, *5 (Del. Ch. 2007). Here, AMC was not a stranger to the contract or business relationship between the Foundation and the DSU students, but was instead intimate with both. Plaintiff argues that the interference was with *prospective* business relationships, and presumably those future relationships will not now involve AMC. But the only act alleged to be improper is AMC's alleged breach of contract. The Complaint fails to allege, and indeed nothing in Plaintiff's brief suggests, that at the time AMC was performing the allegedly

6

interfering acts, AMC or Plaintiff believed AMC would not be involved in future business relationships with the DSU students.  Furthermore, when the allegedly breaching acts occurred, the two parties were, undisputedly, still parties to the same contract.  As explained in Tenneco,

> Merely because one party later tried to exercise its rights to the potential detriment of another party does not make one of them a stranger to the contract. Among contracting parties, economic incentives for cooperation or adverse conduct are likely to change with time. ***That conflicting courses of conduct may become appropriate for various parties to a contract does not alter the relationship among those parties with respect to the potential for claims sounding in tortuous interference with contract***.

Tenneco, 2007 WL 92621 at *5 (emphasis added).

## IV.  CONCLUSION

For all the foregoing reasons, in addition to those set out in AMC's Memorandum of Law (D.I. 5), AMC respectfully requests that this Court dismiss Claims I and III of Plaintiff's Complaint.

Respectfully submitted this 26th day of November, 2007.

            **WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
            *A Professional Limited Liability Company*

            By:   /s/ AnnaMartina Tyreus_____
                    Gerard M. O'Rourke (DE #3265)
                    Anna Martina Tyreus (DE # 4771)
                    222 Delaware Avenue, 15th Floor
                    Wilmington, DE 19801
                    Main Number: (302) 252-4320
                    Main Fax: (302) 252-4330
                    gorourke@wcsr.com
                    mtyreus@wcsr.com

Robert R. Ambler, Jr. (GA #014462)
John G. Perry (GA#141609)
**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**
One Atlantic Center, Suite 3500
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 872-7000
Fax: (404) 888-7490
rambler@wcsr.com
joperry@wcsr.com

*Attorneys for Ambling Management Company*

8

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the within and foregoing *Defendant Ambling Management Company's Reply Brief in Support of Its Motion to Dismiss* has been served upon counsel of record by electronic service using CM/ECF and by placing same in the United States postal service with proper postage affixed thereto and addressed to the following:

> Kathleen Furey McDonough
> Sarah E. DiLuzio
> Potter Anderson & Corroon, LLP
> 1313 N. Market Street
> P.O. Box 951
> Wilmington, DE 19899-0951
> (302)984-6000

This 26th day of November, 2007.

/s/ AnnaMartina Tyreus_____
Anna Martina Tyreus (DE # 4771)

WCSR 3784882v4